## JAMES W. GAY *vs.* JOSEPH P. MENDONCA.

EXCEPTIONS FROM RULINGS OF PRESTON, J.

APRIL TERM, 1888.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Where by the special findings in the verdict it was apparent that the jury had misunderstood the instructions of the Court in respect to the measure of damages, a new trial was ordered upon the amount of damages only.

OPINION OF THE COURT, BY McCULLY, J.

After a verdict for the plaintiff, a new trial was ordered, upon which the plaintiff filed these exceptions :

" The case is set out in the decision of Mr. Justice Preston, which may be read as a part of this bill of exceptions.

" The evidence, so far as it affects the points in issue, is taken from the Judge's notes, and is filed herewith ; also notes of the Judge's charge."

The decision referred to is given here.

DECISION OF MR. JUSTICE PRESTON.

This is an action for breach of covenant contained in a lease of certain lands situate at Mokuleia, Waialua, Island of Oahu, demised by the defendant to the plaintiff.

The complaint is as follows :

" The undersigned claims of Joseph P. Mendonca, defendant, residing at Waialua, in the Island of Oahu, the sum of twenty thousand dollars for damages resulting to him in that the defendant, on the twenty-seventh day of May, A. D. 1884, by indenture of that date between himself and the plaintiff, one part of which said indenture, signed, sealed and acknowledged by the parties, the plaintiff now brings here into Court, did demise and lease unto the plaintiff, his executors, administrators

and assigns, all the land held, owned and controlled by the defendant at Mokuleia, Waialua, aforesaid, excepting, as in said indenture is excepted, certain two hundred acres to be thereafter surveyed and set apart. To have and to hold said demised land, excepting as aforesaid, unto the plaintiff, his executors, administrators and assigns, for and during the full end and term of fifty years from the first day of May, A. D. 1884, yielding and paying therefor the sum of twelve hundred and fifty dollars for each and every year during the continuance of said lease, and in and by said indenture the defendant covenanted with the plaintiff, his executors, administrators and assigns, that there were in the demised premises fully one hundred and fifty acres of land fit and at a proper level to be cultivated in rice, by aid of artesian wells, over and above said two hundred acres.

" And although the plaintiff hath performed all conditions precedent on his part, and all things have happened and occurred, and all periods of time have elapsed to entitle the plaintiff to a performance of the defendant's covenant, and to enable the plaintiff to maintain this action; yet the defendant has not shown, furnished or placed at the plaintiff's disposal, and there are not in the demised premises, fully one hundred and fifty acres, but only 61 93-100 acres of land fit and at a proper level to be cultivated in rice over and above said two hundred acres, and so the defendant, although often required, hath not kept, but hath broken his said covenant in this, that the plaintiff could not hold and use all of such one hundred and fifty, but only 61 93-100 acres of land fit and at a proper level to be cultivated in rice, according to the form and effect of· said indenture, to the plaintiff's damage as aforesaid, which the plaintiff alleges was and is in contravention of his private rights under the laws."

At the trial before me at the special term in February last, the jury found there was a deficiency of 88 7-100 acres of land of the 150 acres warranted by the defendant by his covenant. It was proved that under an agreement entered into between

the parties on the 10th April, 1885, whereby the parties agreed upon the level to be taken for the survey of metes and bounds of the 200 acres of land reserved by the lease and of the 150 acres of rice land guaranteed to the plaintiff, a survey was made of such lands.

Evidence on behalf of the plaintiff was given to show that the value of the land as rice land was ten dollars per acre, but no evidence was given on his behalf that the land could be leased for such sum without water. Mr. Rowell, who made a survey of the lands, stated that he based his valuation of ten dollars an acre by taking the value at twenty-five dollars. The plaintiff stated that some of the land claimed by the defendant to be rice land, and included in the deficiency, was worth two dollars an acre per annum for pasturage purposes.

The plaintiff claimed that the measure of damage was the annual rental value of the deficiency from the date of the lease to the 13th December, 1887—the date of the writ—with interest at the rate of nine per cent. per annum, computed annually, and claimed that such value was ten dollars per acre.

I instructed the jury to find the amount of shortage (if any) so as to avoid litigation upon that point, and told them that " whenever a party to a contract has failed to perform what he has contracted to do, the other party is entitled to compensation in damages ; that as far as money can do it he is to be placed in the same situation with respect to damages as if the contract had been performed."

I also told the jury that the measure of damages claimed by the plaintiff was not the correct way of ascertaining such damage—that ten dollars would not be the proper measure ; that if they found a shortage, the true measure of damage would be to consider the amount of rent payable under the lease, and say how much less it would be fair for the plaintiff to pay for the shortage ; how much less the annual rent should be on account of shortage, and to calculate that amount, not from the date of the lease, but for one year less, being the time the survey was made according to the level agreed upon.

The land included in the lease was stated by the plaintiff to be over 1700 acres, and there were a dwelling-house and out-buildings upon the property.

The jury returned the following verdict: " We, the jury in the above case, find for the plaintiff a shortage of acreage existed at time of making lease amounting to 88 7-100 acres; amount overpaid for rent each year at 8 33⅓-100 dollars per acre equals 733 92-100 dollars. Time on which damages are computed, viz.: May 24, 1884, to December 14, 1887, viz., 3 years, 6 months and 15 days, at 733 92-100 dollars, equals 2599 30-100 dollars, which amount we award plaintiff."

The defendant excepted to the verdict, and gave notice of motion for a new trial.

On the 14th February the defendant filed his motion to set aside the verdict, and for a new trial, on the grounds that such verdict is contrary to law and the instructions of the Court and against the weight of evidence, and that the damages are excessive, which motion was argued before me on the 15th February.

It appears to me that the jury must have misunderstood my instructions, or misapprehended the effect of the lease and the evidence as to the amount of land and other property demised.

They appear by their verdict to have taken into consideration the 150 acres of rice land only, and that the rent ($1250) was payable in respect of that land only, 8 33⅓-100 dollars per acre for 150, making the total rent $1250. They have also calculated the damages for the whole term instead of deducting one year according to my instructions.

The effect of the verdict is that the defendant would only receive rent for 61-93 acres of rice land, and that the plaintiff would, according to the calculation of the jury, hold the balance of the land above 1700 acres and the house free of rent for the residue of the term.

I cannot think the jury could have understood this to be the effect of their verdict.

I am of the opinion that this verdict must be set aside so far as respects the damages.

There was testimony to support the finding of the jury as to the amount of shortage, and I think this finding should stand.

A new trial should be granted upon the amount of damages only, and I order so.

### By the Court.

It appears by the foregoing that the demised premises contained over 1700 acres, at an annual rental of $1250. That of this amount 150 acres was covenanted to be suitable for rice culture. That the jury found that there was a shortage of the land fit for rice of 88 7-100 acres, and that the defendant had overpaid for rent each year 8 33½-100 dollars per acre of such shortage. That is to say, the jury applied the whole rent, $1250 per year, to the 150 acres covenanted to be rice land, allowing no rent for the 1550 acres, with a dwelling-house, etc. There was testimony that some of this land was worth $2 per year rent as pasturage.

It appears, moreover, that they made this computation to extend over a year, which they were directed by the Court to deduct.

These computations are undoubtedly in contravention of the instruction of the Court in these words : " That if they found a shortage, the true measure of damage would be to consider the amount of rent payable under the lease, and say how much less it would be fair for the plaintiff to pay for the shortage ; how much the annual rent should be on account of shortage, and to calculate that amount, not from the date of the lease, but for one year less, being the time the survey was made according to the level agreed upon."

These instructions were not excepted to.

Section 822 of the Civil Code reads : " All questions of law arising in any civil cause shall be decided by the Court or Judge before whom the matter is pending ; and the instructions of such Court or Judge in relation to the law shall be binding upon the jury, if any be impanelled in the cause."

We do not see how there is now room for argument upon the propriety of this instruction. It must be taken to be the law of this case. The jury was bound to regard it. They have evident-

ly disregarded (or misunderstood) it. Here was their rule for the determination of the damages. They have taken another.

The counsel for the plaintiff makes an ingenious and elaborate argument to show that they might have arrived at the same result by evidence of profits lost, which were reasonably certain to have been realized if the shortage had not existed. But the evidence in this case shows that the plaintiff had not placed any part of the land in a position to be rented for rice land. If he has lost the rental of the 88 7-100 acres not suitable for rice land, he has, in fact, lost the rental of the 61 93-100 acres which he is in possession of, for he has not rented them, not having put down wells. The contract of the Chinese tenants of the two hundred acres is to take the additional land from the date of sufficient water flowing over them.

It is true, as charged by the learned Justice, that there was a breach of the covenant from the date of the execution of the lease. But at that point of time the plaintiff had suffered no other than nominal damage, for he had lost nothing. Equally true is it that he has lost nothing through the defendant until he has failed to obtain a rental through lack of land which is fit for rice and is watered. Is the plaintiff then bound to bore wells upon land not fit and suitable for rice culture ? No. Would he be bound, if no part of the 150 acres covenanted were found, to bore wells and suffer the loss in order to recover damages ? We answer again : No.

In our view, the amount of plaintiff's damage must be based upon evidence of the reduced value of the whole rental of the whole land by reason of the shortage 88 7-100 acres of land of this certain description. Such proof would be, perhaps, difficult to make. It appears not to have been made at the trial.

We have made these observations upon the correctness of the instructions given, because we have been requested by counsel for plaintiff in the argument before us to indicate the rule of damage which would be held in another trial, without waiving the position taken that as there were no exceptions taken to the instruction, it must be held as the law in this trial.

The defendant also took a bill of exceptions at the trial, the points of which we will consider.

There was in the lease a covenant by the plaintiff, that at the request of the defendant the plaintiff would set aside twenty acres of the demised land suitable for a homestead for the sole use of the defendant and his family, with water privileges for household purposes and ordinary irrigation.

Counsel contended that these twenty acres should be deducted from the 150 acres, but the Court instructed the jury contrariwise, to which exception was taken.

We are of opinion that land of the description of the twenty acres, and of such water privilege, would not come within the description of land and water suitable for rice culture, and sustain the direction of the Court on this point.

The counsel for defendant asked for two instructions respecting a written agreement of date 10th April, 1885, by which the level, that is the altitude on which the survey should be made, that it should be held not binding for want of consideration, and must be construed as a parol agreement.

These instructions were refused on the ground that it was an agreement in pursuance of and to effectuate the covenant in the lease.

We are of opinion that the Court was correct in this view.

Defendant's counsel's third instruction asked was that no damage can be given beyond the date of April 11, 1887, when the defendant removed certain fences and tendered plaintiff some other land in compensation for the shortage. We are of opinion that this instruction was properly refused. The plaintiff's claim for damages was based upon the breach as to the demised premises. He was not bound to accept other premises in substitution or in supplement of them.

New trial, limited to the question of the amount of damages, is ordered.

*A. S. Hartwell*, for plaintiff.

*F. M. Hatch*, for defendant.